T.C. Memo. 1995-496


UNITED STATES TAX COURT


OHIO PERIODICAL DISTRIBUTORS, INC., f.k.a. SCOTT KRAUSS
NEWS AGENCY, INC., RONALD E. SCHERER TRUST AND
LINDA S. HAYNER TRUST, PERSONS OTHER THAN THE
TAX MATTERS PERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12982-94.                    Filed October 16, 1995.


<u>Daniel M. Davidson</u>, for petitioners.

<u>James E. Kagy</u>, for respondent.


MEMORANDUM OPINION


RAUM, <u>Judge</u>:  The Commissioner determined adjustments in the
S corporation's income in the amounts of $3,869,422, ($101,725),
$165,516, and $464,205 for its taxable years 1985, 1986, 1987,
and 1988, respectively.  At issue is whether an election made by

the corporation under section 458[1], resulting in the exclusion from gross income of the amount of the corporation's income attributable to returns from "qualified" sales of magazines and paperbacks, requires the making of a corresponding adjustment to cost of goods sold pursuant to section 1.458-1(g), Income Tax Regs. More specifically at issue is the validity of section 1.458-1(g), Income Tax Regs., which, if valid, would without dispute require a decision against petitioner.

Ohio Periodical Distributors, Inc. ("Ohio Periodical" or "the corporation") has been operating as an S corporation in Ohio since 1984. At all times relevant, the corporation prepared its Federal income tax returns using the accrual method of accounting. It was a wholesale distributor of magazines and paperback books. Its customers were bookstores and other businesses engaged in the retail sale of such merchandise to the public.

At all times relevant, in accordance with industry practice, Ohio Periodical sold more copies of paperbacks and magazines to its customers than it expected the customers to resell. The corporation nevertheless billed its customers for the full number of copies thus sold to them. However, in accordance with industry practice, the customers had the legal right to receive

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.

full credit from the corporation for the magazines and paperbacks that they were unable to resell.

On its 1982 Federal income tax return, Ohio Periodical made a proper election to use the provisions of section 458.[2] The election was effective for the 1982 tax year and every tax year thereafter. For each of the years in issue, the corporation made sales and had returns of those sales items during the merchandise return period, defined in section 458(b)(7).[3] Such sales were

------

[2] Sec. 458. MAGAZINES, PAPERBACKS, AND RECORDS RETURNED AFTER THE CLOSE OF THE TAXABLE YEAR.

(a) Exclusion From Gross Income.--A taxpayer who is on an accrual method of accounting may elect not to include in the gross income for the taxable year the income attributable to the qualified sale of any magazine, paperback, or record which is returned to the taxpayer before the close of the merchandise return period.

[3] Sec. 458(b)(7) reads:

(7) Merchandise return period.--

(A) Except as provided in subparagraph (B), the term "merchandise return period" means, with respect to any taxable year--

(i) in the case of magazines, the period of 2 months and 15 days first occurring after the close of taxable year, or

(ii) in the case of paperbacks and records, the period of 4 months and 15 days first occurring after the close of the taxable year.

(B) The taxpayer may select a shorter period than the applicable period set forth in subparagraph (A).

qualified sales under section 458(b)(5)[4] because the corporation had a legal obligation to adjust the price if the item was not resold and the price was adjusted because of failure to resell. On its Federal income tax returns for each of the years in issue, Ohio Periodical, pursuant to section 458(b)(6),[5] excluded from gross income the amount of the qualified returns. The corporation did not, however, make a corresponding adjustment to cost of goods sold pursuant to section 1.458-1(g), Income Tax Regs.

In 1994, the Commissioner issued a Notice of Final S Corporation Administrative Adjustment for the corporation's 1985

---

[4] Sec. 458(b)(5) reads:

(5) Qualified sale.--A sale of a magazine, paperback, or record is a qualified sale if--

(A) at the time of sale, the taxpayer has a legal obligation to adjust the sales price of such magazine, paperback, or record if it is not resold, and

(B) the sales price of such magazine, paperback, or record is adjusted by the taxpayer because of a failure to resell it.

[5] Sec. 458(b)(6) reads:

(6) Amount excluded.--The amount excluded under this section with respect to any qualified sale shall be the lesser of--

(A) the amount covered by the legal obligation described in paragraph (5)(A), or

(B) the amount of the adjustment agreed to by the taxpayer before the close of the merchandise return period.

taxable year. At about the same time, the Commissioner also issued Notices of Final S Corporation Administrative Adjustment for the corporation's 1986, 1987, and 1988 taxable years.

The Ronald E. Scherer Trust (the "Scherer Trust") was the Tax Matters Person of the corporation, for purposes of section 6231(a)(7), and a Notice Person of the corporation for purposes of sections 6226(b)(1) and 6231(a)(8). The Linda S. Hayner Trust (the "Hayner Trust") was also a Notice Person of the corporation. The Scherer Trust, as Tax Matters Person, failed to file a petition for readjustment of subchapter S items within the period specified in section 6226(a). However, the Scherer Trust and the Hayner Trust, as Notice Persons, timely filed a petition for readjustment of subchapter S items under section 6226(b).

The parties have reached an agreement on all issues save the treatment of adjustments to closing inventory and to cost of goods sold pursuant to section 1.458-1(g), Income Tax Regs. Petitioners contend that section 1.458-1(g), Income Tax Regs., is invalid. However, the parties have stipulated that if this Court determines that the regulation is valid, the adjustments made by the Commissioner are proper and should be allowed in their entirety.

Section 458(a) provides that an accrual basis taxpayer "may elect not to include in * * * gross income for the taxable year the income attributable to the qualified sale of any magazine, paperback, or record which is returned to the taxpayer before the

close of the merchandise return period."  Section 458(b)(6)
defines the amount excluded from gross income as "the lesser of
* * * the amount covered by the legal obligation described in
paragraph (5)(A), or * * * the amount of the adjustment agreed to
by the taxpayer before the close of the merchandise return
period."  The legal obligation of paragraph (5)(A) is the
obligation of the taxpayer to adjust the sales price of the
magazine, paperback, or record if it is not resold.  Section
1.458-1(g), Income Tax Regs., contains the formula for
determining excludable gross income.  It states:

> If a taxpayer makes adjustments to gross receipts for a
> taxable year under the method of accounting described
> in section 458, the taxpayer, in determining excludable
> gross income, is also required to make appropriate
> correlative adjustments to purchases or closing
> inventory and to cost of goods sold for the same
> taxable year.  Adjustments are appropriate, for
> example, where the taxpayer holds the merchandise
> returned for resale or where the taxpayer is entitled
> to receive a price adjustment from the person or entity
> that sold the merchandise to the taxpayer. Cost of
> goods sold must be properly adjusted in accordance with
> the provisions of section 1.61-3 which provides, in
> pertinent part, that gross income derived from a
> manufacturing or merchandising business equals total
> sales less cost of goods sold.

Id.

The identical issue of the validity of section 1.458-1(g),
Income Tax Regs., was raised in Hachette USA, Inc. v.
Commissioner, 105 T.C. ___, ___ (1995).  Petitioners' counsel in
this case was also counsel in Hachette.  Petitioners' briefs in
both cases presented identical arguments.  In fact, the 30 pages
of brief in this case that address the validity of the regulation

are the same verbatim as the corresponding argument in the brief submitted in Hachette.

Petitioners contend that section 458(b)(6) provides an explicit formula for determining the adjustment to income: the amount of the credit against sales price which the taxpayer must grant to the purchaser. They assert that the language of section 458(b)(6) is unambiguous, and that the formula contained in section 1.458-1(g), Income Tax Regs., transforms the "amount excluded" based on credit given for returned items into an amount equal to the distributor's gross profit on those items.

In response to these arguments, this Court in Hachette held the regulation valid. Id. at ___ (slip op. at 27). After examining the legislative history, the Court determined that the regulation is consistent with generally accepted accounting principles and with sections 446 and 471. Id. at ___ (slip op. at 20-21). The Court also held that there is no evidence that Congress intended that a taxpayer who did not bear any costs could forgo the correlative cost adjustments. Id. at ___ (slip op. at 22). Because distributors were reimbursed by publishers, they should not get the benefit of the deduction without bearing the risk. Id. In view of the identity of issues and the detailed analysis by this Court in Hachette, it is unnecessary to go over the same ground again. We follow Hachette.

Decision will be entered

for respondent.